# CIRCUIT COURT OF THE CITY OF RICHMOND

School Board of the
City of Richmond
and Deborah Jewell-Sherman,
Superintendent,
City of Richmond Public Schools,
and City Council of the
City of Richmond

    v.

L. Douglas Wilder,
Mayor of the
City of Richmond,
and Harry E. Black

Case No. CL07-4619

BY JUDGE MARGARET P. SPENCER

November 5, 2007

    This matter is before the Court on Respondents' Demurrer and Alternative Pleas in Bar. Upon consideration of the pleadings, memoranda, oral arguments, and applicable law, the Demurrer and Pleas in Bar are overruled.

## I. *Background*

On September 21, 2007, L. Douglas Wilder, Mayor of the City of Richmond, and Harry E. Black, Chief Financial Officer of the City of Richmond ("CFO") required employees of the City of Richmond Public Schools ("RPS"), the School Board of the City of Richmond ("School Board" or "Board"), City employees, the media, and the general public to immediately vacate City Hall. (Complaint of Intervention of Petitioner-Intervenor for Declaratory Judgment and Injunctive Relief ¶ 10; "Complaint.") Workers stationed throughout City Hall packed school records and files, and loaded them onto moving vans parked on the streets. (Petition for a Temporary Restraining Order and/or Interlocutory Injunction ¶ 2; "Petition.") These records and files included confidential employee records, alumni records, student IQ scores, medical records, grades, anecdotal comments about students, rating profiles, and psychological reports. (*Id.*) Some of these records are protected by the Federal Educational Rights and Privacy Act of 1974 ("FERPA"). (Complaint ¶ 11.)

The School Board held a meeting in City Hall to respond to the move. Although such meetings are open to the public, police officers prevented the public and members of the press from entering City Hall to attend the meeting. (Petition ¶ 2.) The Board met in closed session to consider its options and then left City Hall to reconvene in an open meeting on Ninth Street. (*Id.*)

The Board voted at its meeting to seek a temporary restraining order or interlocutory injunction to prevent the removal of Board and RPS employees, files and records from City Hall. The Board subsequently filed a petition seeking this relief. The Petition asserts the City Council of the City of Richmond ("Council") passed Ordinance Number 2007-191-178 ("Ordinance") on June 25, 2007. This Ordinance directs the City Mayor, on behalf of the City of Richmond, to continue to lease the twelfth through seventeenth floors of City Hall to the School Board. (Petition 3.) The Mayor neither vetoed this Ordinance nor signed the lease required by the Ordinance. (*Id.*) After a hearing on the Petition, this Court granted the requested relief. The Court temporarily enjoined the Respondents from moving the Board and RPS employees and property from the twelfth to seventeenth floors of City Hall until September 30, 2007. The Court also ordered Respondents to return Petitioners' property to City Hall and restore the twelfth to seventeenth floors to the status quo existing prior to the move. (Court Order September 22, 2007).

On September 24, 2007, Council approved the School Board's actions of September 21, 2007, and voted to intervene in support of the Board and RPS. Council filed a "Complaint of Intervention for Declaratory Judgment and Injunctive Relief" naming the Mayor and the CFO as Respondents and asked this Court to:

(1) Declare the Ordinance valid;

(2) Preliminarily and permanently enjoin the Mayor and Mr. Black from acting contrary to the Ordinance;

(3) Declare that Mr. Black may not exercise the duties, responsibilities, or powers of the Chief Administrative Officer ("CAO") or Acting CAO and preliminarily and permanently enjoin Mr. Black from exercising such powers;

(4) Declare that the Mayor has a mandatory duty to submit a new nominee for CAO and require the Mayor to do so in the next sixty days, and

(5) Award Council other and further relief as the Court deems meet and just under the circumstances, including but not limited to requiring the Mayor and/or Mr. Black to reimburse the City for the expenses associated with the attempted eviction. (Complaint ¶ 15 through ¶ 17.) On September 26, 2007, the Mayor filed the "Demurrer and Alternative Pleas in Bar" before this Court. This motion asserts the following arguments:

(1) The Mayor is immune from suit at common law and pursuant to § 2.08 of the Charter of the City of Richmond ("Charter");

(2) The members of the School Board lack standing because they have not sued in the proper form pursuant to Va. Code Ann. § 22.1-71;

(3) The Board lacks standing and the Court lacks jurisdiction because the suit was brought in violation of Va. Code Ann. § 22.1-82;

(4) The RPS Superintendent lacks standing to assert the real estate claims of the School Board;

(5) The Board and the RPS Superintendent lack standing because the Ordinance purports to create contract rights in RPS and RPS is not capable of contracting;

(6) The Ordinance was not adopted in proper form because it contravenes § 4.09 of the Charter;

(7) The Ordinance is illegal special legislation in violation of Article IV, § 14(8), of the Virginia Constitution, and

(8) The Ordinance is invalid because it conflicts with Chapter 5 of the Charter creating the strong mayor form of city government.

On September 26, 2007, after consideration of briefs and argument, this Court extended the preliminary injunction and temporary restraining order until November 30, 2007. (Court Order September 26, 2007.) On September

28, 2007, Petitioners filed a Motion for Leave to File an Amended Petition. This Motion sought to substitute the Board as Petitioner, in place of its individual members, and to join Mr. Black as a Respondent.

This Court heard arguments, on October 22, 2007, on Council's Motion to Intervene, Petitioner's Motion to Amend, and Respondent's Demurrer and Alternative Pleas in Bar. Prior to the hearing, Respondents withdrew their opposition to Petitioner's Motion to Amend if the Court would allow the Demurrer to stand, *mutatis mutandis*, and include the additional Respondent, Mr. Black. The Court granted the Motion to Amend the Petition.

The Court also granted Council's Motion to Intervene, but limited the requested relief to the following: a declaration that the Ordinance is valid and an injunction prohibiting the Mayor and Mr. Black from acting in contravention of the Ordinance. At the conclusion of the hearing, all parties acknowledged the Demurrer addressed the merits of the case and asked this Court to rule on all issues raised in the Demurrer.

## II. *Analysis*

The parties agree that the ultimate issue before the court is the validity of Ordinance Number 2007-191-178. This Ordinance states, in relevant part:

> § 1. That, notwithstanding the provisions of any other ordinance to the contrary, the Mayor, for and on behalf of the City of Richmond, shall enter into a lease with Richmond Public Schools to permit Richmond Public Schools to continue to use the space that Richmond Public Schools currently occupies in City Hall, 900 East Broad Street. Such lease shall be (i) substantially in the form of the document attached to this ordinance, (ii) approved as to form by the City Attorney, and (iii) executed on behalf of the City within 30 days of the effective date of this ordinance. § 2. This ordinance shall be in force and effect upon adoption.

### A. *The Demurrer*

"The purpose of a demurer is to determine whether a [complaint or petition] states a cause of action upon which the requested relief may be granted." *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 712, 636 S.E.2d 447, 449 (2006). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Mark Five Constr., Inc. v. Castle Contr.*,

274 Va. 283, 287-88, 645 S.E.2d 475, 477 (2007) (citations omitted). "A demurrer admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations." *Taboada v. Daly Seven, Inc.*, 271 Va. 313, 317, 626 S.E.2d 428, 429 (2006) (citations omitted). This Court must consider the facts stated and those reasonably and fairly implied in the Petition and Complaint in a light most favorable to the Petitioners. The Court must sustain the demurrer if it is clear that the Petitioners have not stated a valid cause of action. *See Ogunde v. Prison Health Servs., Inc.*, 274 Va. 55, 64, 645 S.E.2d 520, 526 (2007). The relevant facts and legal conclusions in the pleadings are set forth in Part I above.

Respondents' claims 5 through 8 attack the validity the Ordinance. Petitioners' pleadings specifically state that the Ordinance is valid. (Petition ¶¶ 7–8, Complaint ¶¶ 22–24.) The statement that the Ordinance is valid is either a statement of fact or a conclusion of law. If it is a fact, the validity of the Ordinance must be accepted as true because a "demurrer admits the truth of the facts contained in the pleading." *Taboada*, 271 Va. at 317, 626 S.E.2d at 429. Therefore, Respondents' claims raising sovereign immunity and standing are the only claims this Court need consider in ruling on this Demurrer and Alternative Pleas in Bar. In Part II.B below, this Court resolves the sovereign immunity and standing issues. If the statement that the Ordinance is valid is a conclusion of law, a "demurrer does not admit the correctness of the conclusions of law found in the challenged pleading." *Tronfeld*, 272 Va. at 713, 636 S.E.2d at 449. In Part II.C of this decision, this Court addresses the four claims challenging the validity of the Ordinance.

B. *Sovereign Immunity and Standing*

1. *Are Respondents Immune from This Lawsuit?*

Respondents claim they are immune from legal actions that seek injunctive relief pursuant to § 2.08 of the City Charter. Section 2.08 provides:

> No injunction shall be awarded by any court or judge to stay the proceedings of the city or any of its officers, employees, or agents in the exercise of any of their powers unless it be manifest that the city, its officers, employees, or agents are transcending the authority given the city by this charter and the general laws of the Commonwealth and also that the intervention of a court of equity is necessary to prevent injury that cannot be compensated by damage.

Section 2.08 does not grant Respondents immunity in the matter before this Court. First, the action Petitioners seek to enjoin is not a "proceeding" but an alleged unlawful eviction. Secondly, Petitioners claim Respondents violated a valid Ordinance and thereby failed to properly "exercise . . . their powers" and transcended their "authority." Finally, § 2.08 precludes the award of an injunction unless certain prerequisites are met, *e.g.*, a finding that city officers transcended authority and a finding that intervention is necessary to prevent injury that cannot be compensated by damages. It does not prevent a lawsuit seeking a determination that the prerequisites have been established. Thus, the prohibition against an injunction in § 2.08 does not apply to the facts before the Court. The Respondents are not immune from suit under § 2.08 of the City Charter.

Respondents also claim immunity on common law grounds. They state the Mayor and CFO "enjoy official immunity. The Mayor is, of course, aware of the ruling in the *City Council* Case but raises this argument here to preserve the point." (Demurrer, p. 7.) In *City Council of the City of Richmond v. L. Douglas Wilder, Mayor of the City of Richmond, et al.*, Case No. CL07-2426-4, this Court found the defendants were not entitled to sovereign immunity. The defendants assertion that they were entitled to sovereign immunity, in a collateral action, was rejected by the Supreme Court of Virginia. In the case at bar, this Court will adopt the ruling in Case No. CL07-2426-4 as its ruling on the common law sovereign immunity claim.

*2. Does the School Board Lack Standing for Failure to Comply with Va. Code. Ann. § 22.1-82?*

Respondents argue that, under Va. Code Ann. § 22.1-82, a school board lacks standing to sue another governmental agency in Virginia or to expend any funds for such a suit without prior approval of the governing body of the locality. In this case, the governing body, the City Council of the City of Richmond, did not approve the filing of the initial Petition on September 21, 2007. (The Respondents abandoned two other standing claims (Nos. 2 and 4) raised in the Demurrer filed on September 26, 2007.)

Petitioners acknowledge that, under normal circumstances, Va. Code § 22.1-82 requires prior Council approval of a School Board lawsuit against another governmental agency. They argue, however, that Va. Code § 22.1-82 is not applicable here.

The statute provides:

A school board shall, prior to instituting any legal action or proceeding against any other governmental agency in Virginia or expending any funds therefor, first secure the authorization of the governing body of the county, city, or town constituting the school division or the governing bodies of the counties or cities in the school division if the division is composed of more than one county or city except as to legal actions or proceedings arising between the school board and the governing body or bodies.

Section 22.1-82 explicitly addresses legal actions or proceedings by a school board against "any other governmental agency in Virginia." It does not address actions or proceedings against persons or governmental officers or employees of a governmental agency. "[W]ords in a statute are to be construed according to their ordinary meaning, given the context in which they are used." *Virginia Beach v. Board of Supervisors*, 246 Va. 233, 236, 435 S.E.2d 382, 384 (1993). The Petition filed late Friday evening, September 21, 2007, was prior to Council approval on Monday, September 24, 2007. However, the only named Defendant/Respondent in this Petition was "L. Douglas Wilder, Mayor, City of Richmond." This Respondent is not a "governmental agency," within the meaning of § 22.1-82.

Moreover, actions between "the school board and the governing body or bodies" are exempt from the prior approval requirement. (See § 22.1-82, "except as to legal actions or proceedings arising between the school board and the governing body"). Thus, assuming this action is against the "City of Richmond" because the City is listed after the Mayor's name, there is no statutory requirement for prior City Council approval.

Finally, the case at bar is now proceeding on the Amended Petition and the Intervenor's Complaint. Both pleadings were filed after the September 24, 2007, City Council vote of approval. Both pleadings name the Mayor and the CFO as Respondents. Neither the Mayor nor the CFO is a "governmental agency."

The School Board was not required to comply with Va. Code Ann. § 22.1-82 prior to filing the Petition on September 21, 2007.

C. *Validity of the Ordinance*

    1. *Does the Ordinance Contravene § 4.09 of the City Charter?*

    Respondents claim the Ordinance violates § 4.09 of the Charter, which states: "All ordinances which repeal or amend existing ordinances shall set forth in full the section or subsection to be repealed or amended. . . ." Respondents argue the Ordinance repeals or amends § 26-2 of the City Code, because it "interferes with" the CAO's power to lease property. The CAO's authority to lease property is stated in § 26-2(a):

> *Authority of chief administrative officer to lease real estate; terms and conditions of lease.*
>     (a) No city-owned real estate shall be leased, whether at-will or otherwise, for a period of one year or longer unless the terms of such lease have first been approved by an ordinance adopted by the council. The mayor may introduce an ordinance to direct the chief administrative officer to execute a lease for specific city-owned real estate. The chief administrative officer is hereby authorized to lease, for a period of less than one year, real estate owned by the city or any part thereof which the council has determined, which determination may be expressed by the adoption of a resolution, to be not devoted to and not immediately needed for public use, upon the following terms and conditions. . . .

    Section 26-2 gives the CAO the limited power to lease City property for "a period of less than one year" without prior authorization from Council, if Council has determined the property is "not immediately needed" for public use. The CAO is not authorized to lease property for a period of one year. The CAO is not authorized to lease property for periods longer than one year. Leases for "a period of one year or longer" must be approved "by an ordinance adopted by the council."

    The Ordinance at issue authorizes a lease period of one year. The introductory clauses in the Ordinance state: (1) pursuant to § 2.03(g) of the City Charter, the City has the power to lease City property, and (2) pursuant to § 4.02 of the City Charter, all powers vested in the City shall be exercised by the Council. The Ordinance also states that, pursuant to § 5.05 of the City Charter, the Mayor must perform duties "which may be prescribed by ordinances adopted

by the Council." The Ordinance then provides that the Mayor shall lease the City Hall space occupied by RPS to RPS, in a lease "substantially in the form of the document attached." The document attached includes a lease term of one year, renewable for four additional one-year terms.

The one year lease (subject to four additional one year renewals) authorized by the Ordinance is a lease for "a period of one year or longer." Therefore, the Ordinance does not "interfere with" the CAO's authority to lease property for periods of less than one year. The Ordinance does not repeal or amend § 26-2 of the City Code and does not violate § 4.09 of the City Charter.

In their Reply Brief, Respondents claim the Ordinance alters the duties of the Manager of City Real Estate Services. City Code § 2-191 *et seq.* states the duties of the Manager of Real Estate Services, a subordinate employee of the CAO. However, none of the duties includes the authority to lease city-owned property. The Manager is responsible for "[s]upervising and coordinating the work and activities relating to the acquisition, preservation, maintenance, and disposal of all real estate by and for the city, including any interest, right, easement, or estate therein. . . ." City Code § 2-192. The Manager supervises and coordinates work "relating" to acquisition of property. Relate means "to have a relationship or connection." *Webster's New Collegiate Dictionary*, p. 975 (1977). The Manager is responsible for maintaining and preserving City real estate, preparing City real estate for disposal, and for any work needed to prepare real estate for use after the City has acquired the real estate. He is not responsible for leasing or acquiring the property. Thus, the Manager of Real Estate Services' duties and the CAO's duties are not altered by the Ordinance.

*2. Does the Ordinance Confer Contract Rights on Richmond Public Schools, a Corporate Body Incapable of Contracting?*

Respondents argue the Ordinance requires the Mayor to execute a lease with RPS, rather than with the School Board. Va. Code Ann. § 22.1-71 designates the school board, and not the local school system, as the body corporate to execute contracts. Respondents maintain the Ordinance is therefore invalid, because a lease executed with RPS will be executed with "a nonexistent body." (Memorandum in Support of Demurrer, p. 4.)

Section 22.1-71 of the Code of Virginia provides:

The duly appointed or elected members shall constitute the school board. Every such school board is declared a body corporate and, in its corporate capacity, is vested with all the

powers and charged with all the duties, obligations, and responsibilities imposed upon school boards by law and may sue, be sued, contract, be contracted with, and, in accordance with the provisions of this title, purchase, take, hold, lease, and convey school property, both real and personal. School board members appointed or elected by district or otherwise shall have no organization or duties except such as may be assigned to them by the school board as a whole.

Here, assuming without deciding the School Board is the sole legal entity authorized to execute the lease, the Ordinance does not mandate a lease with another entity. Specifically, the Ordinance states the Mayor "shall enter into a lease with Richmond Public Schools. . . . Such lease shall be (i) substantially in the form of the document attached to this ordinance, (ii) approved as to form by the City Attorney. . . ." The attached document lists "Richmond Public Schools" as "lessee."

If there is a misnomer in the proper name of the lessee, the Mayor and the City Attorney are authorized by the language "substantially in the form" to change the name of the lessee in the lease. "It is elementary that where a statute is fairly open to two constructions, it should be given that construction which will prevent absurdity, hardship, or injustice." *Polesky v. Northern Virginia Const. Co.*, 196 Va. 532, 535, 84 S.E.2d 443, 445 (1954). In this case, there are arguably two interpretations of the Ordinance. One interpretation gives meaning to the phrase "substantially in the form" and the other interpretation ignores that language. The interpretation that deletes this language, if adopted, will create an "absurdity." This interpretation would mean the "only" form of the lease must be a form that lists "Richmond Public Schools" as lessee, and no other form may be approved by the City Attorney. The Ordinance should be read to give it full effect. *Miller v. Commonwealth*, 172 Va. 639, 648, 2 S.E.2d 343, 347 (1939). Therefore, the Mayor and the City Attorney have the authority to change the name of the lessee prior to execution of a lease "substantially in the form of the document attached" to the Ordinance.

Respondents cite *Miller v. Highland County*, 274 Va. 355, 650 S.E.2d 532 (2007), to support their position. However, *Miller* is not on point. In *Miller*, landowners filed suit challenging issuance of a conditional use permit by the county board of supervisors and failed to name the county board of supervisors as a required party defendant. The landowners named only the county as the defendant. The Court held, pursuant to several provisions in Title 15.2 of the Code of Virginia, that the county board of supervisors, not

the county, was the distinct legal entity subject to suit in a legal action contesting legislative exercise of the board's powers. Unlike *Miller*, the instant case is not an action to enforce a lease executed by the wrong legal entity. There is no executed lease and the Ordinance does not require, by its language, the execution of a lease by the wrong entity.

In sum, the Ordinance does not create rights in an entity incapable of contracting.

### 3. *Is the Ordinance Unconstitutional Special Legislation in Violation of Article IV, § 14(8), of the Constitution of Virginia?*

Article IV, § 14(8), of the Constitution of Virginia provides that the General Assembly cannot enact legislation diminishing an obligation to a political subdivision of the Commonwealth. It states:

> The General Assembly shall not enact any local, special, or private law. . . .
> (8) Remitting, releasing, postponing, or diminishing any obligation or liability of any person, corporation, or association to the Commonwealth or to any political subdivision thereof.

The Supreme Court of Virginia, in interpreting this provision, held the General Assembly cannot grant a locality a power that is not possessed by the General Assembly. *City of Richmond v. Board of Supervisors of Henrico County*, 199 Va. 679, 684, 101 S.E.2d 641, 645 (1958). Therefore, if the General Assembly cannot enact legislation reducing an obligation, then the City Council, a locality, cannot enact legislation reducing an obligation to the locality. Respondents claim the Ordinance diminishes the School Board's rent obligation to the City from $500,000 per year to $10 per year. This "diminished" obligation, it is argued, violates Art. IV, § 14(8), of the Constitution of Virginia.

There is a presumption favoring the constitutionality of legislative enactments and the validity of ordinances. *Kisley v. City of Falls Church*, 212 Va. 693, 697, 187 S.E.2d 168, 170, (1972). This Court "must assume that the General Assembly chose, with deliberation and care, the words it employed" in a statute or Constitutional provision. *Miller*, 274 Va. at 364, 650 S.E.2d at 535. An analysis of the language in Art. IV, § 14(8), establishes that Respondents' unconstitutionality claim is without merit.

First, as Respondents argue, there is no existing lease between the Board or RPS and the City. Therefore, the basis for the existing obligation is not clear. However, assuming there is an existing obligation, a new lease authorized by the Ordinance terminates rather than diminishes this existing obligation.

Secondly, it is undisputed that the $500,000 paid by the School Board to lease space in City Hall was funding provided by the City to the Board and Richmond Public Schools. The funding was transferred from the City and then returned to the City. The source of this funding is, and under the Ordinance will continue to be, the City. Therefore, Council has not diminished an obligation "of any person, corporation, or association" to the City. The statute, by its language, was intended to preclude reducing an obligation owed *to* a locality from an entity outside the locality. No City funds are reduced if the *only* funds involved are, in fact, City funds.

Finally, the language in Art. IV, § 14(8), suggests that the "diminishing" prohibition only applies to obligations involving private "persons, corporations, or associations." There is very little case law on this section, but *Charlottesville Redevel. & Housing Auth. v. City of Charlottesville*, 48 Va. Cir. 562, 563 (1959), a case involving the City of Charlottesville and the Charlottesville Redevelopment and Housing Authority, provides some guidance:

> Counsel for the City take the position that the subsection does not refer to or prohibit special acts defining the obligations of the several political subdivisions as between themselves but only to obligations or liabilities of private persons, corporations, or associations. It seems to me that this position is well taken, and no authority is cited in which it has been suggested that the subsection should not be so construed. However, even if the section in question is not to be construed as above set forth, I do not find in the Act anything that diminishes any obligation or liability of the Housing Authority to the City of Charlottesville or vice versa. The Housing Authority is not prohibited by the Act from doing anything that the City of Charlottesville could require it to do, and the City is not prohibited from doing anything that the Housing Authority could require it to do. It merely provides for an election as a prerequisite to any substantial activity of the Housing Authority.

The court in *Charlottesville* reviewed the provisions (§ 63) of the prior Virginia Constitution. However, the language was essentially the same as Article IV, § 14(8). The court failed to address the claim that this provision does not apply to obligations within political subdivisions or obligations by public entities.

However, language in Article IV supports the position the Court stated was "well taken" in *Charlottesville*. The language does not support a legislative interest in "diminishing any obligation" between "political subdivisions" or between government agencies within a political subdivision. The expressed concern is in "diminishing any obligation or liability" of a "person, corporation, or association" *to* a political subdivision, rather than "diminishing any obligation" *of* or *within* a political subdivision. Legislative intent is determined from the words used in a statute. *Miller*, 274 Va. at 364, 650 S. E. 2d at 535. Thus, the obligation or liability is intended to be one owing *by* a private person, corporation, or association to a political subdivision.

In sum, the Ordinance does not diminish an obligation or liability to the City of Richmond and does not diminish an obligation or liability of a private person, corporation, or association. Therefore, the Ordinance is not unconstitutional special legislation.

4. *Is the Ordinance Invalid Because it Conflicts with Chapter 5 of the City Charter, which Sets Forth the Executive and Administrative Powers of the Mayor?*

Respondents argue the General Assembly's 2004 amendments to Richmond's City Charter created a strong mayor form of government with legislative power vested in the City Council and executive power vested in the Mayor and the CAO. Specifically, Respondents rely on § 5.01 of the Charter, which states the Mayor is the "chief executive officer of the city and shall be responsible for the proper administration of city government." Citing *Thompson v. City of Atlantic City*, 190 N.J. 359, 373-74, 921 A.2d 427, 435-36 (2007), and *Mayor of the City of New York v. The Council of the City New York*, 789 N.Y.S.2d 533, 536 (N.Y. Sup. 2004), Respondents claim one of the Mayor's executive functions in a mayor-council form of government is the authority to negotiate and sign all contracts for the city. Thus, the Ordinance is invalid because Council is negotiating a lease and directing the Mayor to execute the lease. This action, they claim, violates the Mayor's executive authority and the separation of powers doctrine.

However, upon consideration of the City Charter and applicable law, this Court concludes City Council had the authority to lease city-owned property and to direct the Mayor to execute a lease. Moreover, this authority violates neither the Mayor's executive powers, as set forth in the Charter, nor the separation of powers doctrine. The Ordinance is therefore a valid exercise of Council's legislative powers.

### a. *City Charter; Mayor and CAO*

The powers of the Mayor and the CAO, as designated by the General Assembly of Virginia, are set forth in Chapter 5 of the City Charter. Chapter 5, in full, provides:

§ 5.01. *Mayor.* The mayor shall be the chief executive officer of the city and shall be responsible for the proper administration of city government. The mayor shall be recognized as the head of government for all ceremonial purposes, military law and the service of civil process. The office of mayor shall be a full-time position with salary and expenses set by the council.

§ 5.01.1. *Chief Administrative Officer.* The mayor shall appoint a chief administrative officer, subject to the advice and consent of a majority of the members of city council, who shall be chosen solely on the basis of his/her executive and administrative qualifications, with special reference to his/her actual experience in or knowledge of accepted practice with respect to the duties of his/her office. At the time of his/her appointment, the chief administrative officer need not be a resident of the city or the Commonwealth but he/she shall reside within the city during his/her tenure in office. The chief administrative officer shall serve at the pleasure of the mayor. The mayor shall set the salary of the chief administrative officer subject to the approval of a majority of the members of city council.

§ 5.05. *General Duties; Mayor.* It shall be the duty of the mayor to:
(a) Attend, or appoint a designee empowered to answer questions and make recommendations on behalf of the mayor to attend, all meetings of the council with the right to speak but not

to vote; the mayor or his designee shall have the right to attend a closed meeting pursuant to § 2.2-3711 of the Code of Virginia, unless the council determines that the subject matter of the closed meeting includes the office of the mayor and that inclusion of the mayor or his designee shall be detrimental to the purpose of the council's deliberations;

(b) Keep the council advised of the financial condition and the future needs of the city and of all matters pertaining to its proper administration, and make such recommendations as may seem to him/her desirable;

(c) Oversee preparation of and submit the annual budget to the council as provided in Chapter 6 of this charter;

(d) Perform such other duties as may be prescribed by this charter or which may be required of the chief executive officer of a city by the general laws of the Commonwealth, or by ordinances adopted by the council, provided that the mayor shall have the power to veto any city ordinance imposing such duties on him, the chief administrative officer, or any department head appointed by the chief administrative officer, by written notice of veto delivered to the city clerk within 14 calendar days of council's actions, subject to override thereafter by the council with a vote of six or more of the currently filled seats on council at any regular or special meeting held within 14 calendar days of the clerk's receipt of the notice of veto; however, the appointment of members of a redevelopment and housing authority in the city shall be made by the council; and

(e) Issue such regulations as may be necessary in order to implement his/her duties and powers.

§ 5.05.1. *General Duties; Chief Administrative Officer.* It shall be the duty of the chief administrative officer, acting under the general direction of the mayor, to:

(a) Prepare the annual budget for submission to the council by the mayor;

(b) Prepare in suitable form for publication and submit to the council a concise report of the financial transactions and administrative activities of the city government during the fiscal year ending on the preceding thirtieth day of June and cause to be printed such number of copies thereof as the council shall direct;

(c) Present adequate financial and activity reports as requested by the council;

(d) Fulfill the city's responsibilities for maintaining cemeteries as provided for in § 2.05(d) of the charter and § 15.2-1121 of the Code of Virginia;

(e) Attend, or be represented at, all meetings of the council in order to answer questions and make recommendations on behalf of the mayor, provided that prior to any such meetings, council has given the mayor at least 72 hours of advance notice of the matters on which it seeks information or a recommendation; and

(f) Perform such other duties as may be prescribed by this charter or required of him/her in accordance therewith by the mayor other than the duties conferred on the mayor by this charter.

Prior to the 2004 Amendments to the Charter, § 5.01 stated the city manager shall be the chief executive officer of the city and shall be responsible to council for the proper administration of the city government. The 2004 Amendment stated the mayor is the chief executive officer, and with the exception of deleting the "responsible to the council" language, has the same "proper administration of city government" language as in the pre-2004 version. Section 5.01.1 of the Charter ("Chief administrative officer") in the 2004 Amendments is new and contains similar language relating to the qualifications and residency requirements for the city manager in the pre-2004 version of § 5.01. Other 2004 Amendments to § 5 replaced the term "city manager" with "chief administrative officer" or "mayor." *See, e.g.*, §§ 5.02, 5.03, 5.06, 5.07, 2004 Amendments, Chapter 877, Virginia Acts of Assembly, 2004 Session, approved April 15, 2004. Pursuant to the 2006 Amendments to the Charter, the General Assembly amended § 5.05 to state the Mayor shall perform duties as may be prescribed "by ordinances adopted by the council, provided that the mayor shall have the power to veto any city ordinance."

Respondents argue that the Mayor's discretionary duties as chief executive officer, as stated generally in § 5.01, include the duty to either lease property or to ignore ordinances which he believes conflict with his general executive powers. (Respondents' Memorandum, p. 5.) This argument is instructive of the inherent weakness in Respondent's argument, because it acknowledges the absence of a City Charter provision that specifically grants such authority. No provision in Chapter 5 of the Charter, or any other Chapter, grants the Mayor or the CAO the power to lease property. Section 26-2 of the

City Code addresses the CAO's authority to lease property for a period of less than one year. No provision in Chapter 5 of the Charter, or any other Chapter, grants only the Mayor or the CAO the power to contract. No provision in Chapter 5 of the Charter, or any other Chapter, grants the Mayor the authority to determine or address after the 14-day veto period the validity of Ordinances passed by the Council. No provision in Chapter 5 of the Charter, or any other Chapter, grants the Mayor or CAO the authority to violate Ordinances passed by Council.

### b. *City Charter; Council*

Chapter 4 sets forth the powers and duties of the City Council. Section 4.02 states "[a]ll powers vested in the city shall be exercised by the council except as otherwise provided in this charter." Similarly, Va. Code Ann. § 15.2-1401 states "all powers granted to localities shall be vested in their respective governing bodies." Va. Code Ann. § 15.2-1100 states "[a]ll powers vested in a municipal corporation by this chapter shall be exercised by its governing body."

Section 2.03(g) states the City shall have the power to "sell, lease, or dispose of, except as otherwise provided in this charter and in the Constitution and laws of the Commonwealth, land, buildings, and other property of the city, real and personal." Section 2.03(h) states the City shall have the power to "control and regulate the use and management of all property of the city, real and personal." Pursuant to § 4.02 of the Charter and Va. Code Ann. § 15.2-1401, these powers "shall be exercised by" City Council. Thus, Council has the authority to lease, manage, and control City property under the Charter.

### c. *Statutory Construction*

As noted earlier, in construing legislative provisions, courts "assume the General Assembly chose, with deliberation and care, the words it employed" in a statute. "[W]hen construing statutes that impact the same subject," courts "harmonize their provisions whenever possible." *Miller*, 274 Va. at 364, 650, S.E.2d at 535. Moreover, an established rule of statutory construction is "that when one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and where they conflict, the latter prevails." *Peerless Ins. Co. v. County of Fairfax*, 274 Va. 236, 244, 645 S.E.2d 478, 483 (2007), quoting *Virginia National Bank v. Harris, Adm., etc.* 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979).

In determining the legislative powers of localities, Virginia follows the Dillon Rule of strict construction. *Eberth v. County of Prince William*, 49 Va. App. 105, 111, 637, S.E.2d 338, 342 (2006). Under Dillon's Rule, the powers of the Mayor and CAO must either be explicitly conferred upon them by the Charter or necessarily implied from the powers explicitly conferred upon them by the Charter. If there is any doubt whether a power has been conferred by statute, the legislation must be construed against delegation of that power. *City of Richmond v. Confrere Club of Richmond, Inc.*, 239 Va. 77, 79-80, 387 S.E.2d 471, 472 (1990).

### d. *Discussion*

Neither the Charter provisions cited by Respondent, nor the cases from other jurisdictions, support the claim that the Ordinance usurps the Mayor's statutory or discretionary executive power.

First, the Charter provisions governing the authority of the Mayor and CAO, set forth in full above, do not conflict with the Charter provisions governing the authority of the Council. Sections 2.03(g) and 2.03(h) are the only charter provisions specifically providing the power to lease property, and this power "shall be exercised" by City Council (§ 4.09). To the extent this specific designation conflicts with the general executive power of the Mayor in § 5.01, the provisions in §§ 2.03(g) and 2.03(h) must prevail. *Peerless Ins. Co.*, 274 Va. at 244, 645 S.E.2d at 483.

If the General Assembly had intended to authorize the Mayor to exercise "all powers vested in the city," it could have done so. More importantly, if the General Assembly had intended to grant the specific authority to execute all city contracts to a city official, it could have done so. For example, the City Charter of the City of Norfolk, Virginia, specifically grants the city manager the authority to execute all contracts on behalf of the City. Section 50 of the Norfolk Charter states:

> Sec. 50. *Powers and Duties of the City Manager.* The city manager shall be responsible to the council for the efficient administration of all affairs of the city. He shall have power, and it shall be his duty:
> (a) To see that all laws and ordinances are enforced. . . .
> (g) To make and execute all contracts on behalf of the city except as may be otherwise provided in this Charter or by ordinances passed in pursuance thereof.

Similarly, the City Charter of the City of Newport News, Virginia, specifically grants the city manager the authority to execute contracts. Section 5.05(G) of the Newport News Charter states:

Sec. 5.05. *Duties*. It shall be the duty of the city manager to. . . .

G. Execute, under the direction of the council, all contracts, deeds, and other papers, and the seal of the corporation shall be affixed, and attested by the city clerk.

Neither § 5.05 of Richmond's City Charter, which states the "general duties" of the Mayor, nor § 5.05.1 of Richmond's City Charter, which states the "general duties" of the CAO, has a provision comparable to the sections cited above in the Norfolk and Newport News Charters.

Moreover, Respondents' reliance on cases from other jurisdictions erroneously presumes the statutes in those jurisdictions are similar to the statutes governing the City's delegation of executive and legislative powers. They are not. The statutes in New York and New Jersey grant the mayors the same powers the City Charter grants Richmond's City Council.

Respondents cite *Mayor of the City of New York v. The Council of the City of New York*, 789 N.Y.S.2d 533, 536 (N.Y. Supp. 2004), to suggest the power to negotiate a lease is a function of the executive branch of government. In *Mayor*, the court held City Council's attempt to negotiate a lease improperly impinged on the New York City Mayor's executive power. However, the New York Mayor's general executive powers are comparable to the Richmond City Council's general legislative powers. Chapter 1, § 8, of the New York City Charter states: "*General Powers*. The mayor, subject to this charter, shall exercise all the powers vested in the city, except as otherwise provided by law." § 8, New York City Charter (2004). This language is almost identical to the language in Richmond's City Charter, § 4.02: "All powers vested in the city shall be exercised by the council except as otherwise provided in this charter." The Mayors of Richmond and New York do not have the same powers. The *Mayor* case is inapplicable.

Similarly, Respondents cite *Thompson v. City of Atlantic City*, 921 A.2d 427, 435-36 (N.J. 2007), to support the claim that mayors have the authority to negotiate contracts. However, the New Jersey court only restated the applicable New Jersey statute:

§ 40:69A-40. *Mayoral Duties*: The mayor shall. . . .

j. Negotiate contracts for the municipality, subject to council approval. . . .

N.J. Stat. § 40:69A-40 (2007). Further, *Thompson* focused on whether the Mayor could prosecute a suit for money damages against the municipality he headed while defending the city in the same suit and whether he could negotiate a settlement for the city in a suit where he would financially benefit from the agreement. *Id.*, 921 A.2d at 435-36. The Court did not interpret a statute similar to the charter provisions at issue here, and the case has no relevance to the case at bar.

As noted earlier, there is no provision in Richmond's City Charter granting the Mayor the power to negotiate contracts or leases. City Code § 26-2(a) grants the CAO the power to lease certain City property for a period that does not exceed one year. There is no provision in the Code of Virginia, the City Charter, or the City Code granting the CAO or the Mayor the power to negotiate all leases or contracts.

Therefore, the Ordinance does not conflict with the explicit or implied powers granted the Mayor and the CAO by Chapter 5 of the Charter.

Respondents' Reply Brief states "[b]oth the Mayor and the Chief Administrative Officer have an independent duty to determine that the laws and ordinances that they are required to carry out are constitutional and valid" (Respondents' Reply Brief on Demurrer, p. 6.) Respondents cite Va. Code § 15.2-1541 for this claim. This statute states every chief administrative officer shall, "unless it is otherwise provided for by general law, charter or ordinance . . . see that all ordinances . . . required to be enforced . . . are faithfully executed." This statute does not grant the Mayor or the CAO the duty to *adjudicate* the legality of ordinances. That determination, i.e., the determination of whether an ordinance is "required to be enforced" or whether an ordinance conflicts with other laws, is vested solely in the judicial branch of government. " '[P]ure statutory interpretation is the prerogative of the judiciary.' *Sims Wholesale Co. v. Brown-Forman Corp.*, 251 Va. 398, 404, 468 S.E.2d 905, 908 (1996). This axiom stems from basic principles of separation of powers. 'It is emphatically the province and duty of the judicial department to say what the law is.' *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803)." *Finnerty v. Thornton Hall, Inc.*, 42 Va. App. 628, 634-35, 593 S.E.2d 568, 571 (2004). Neither the Mayor nor the CAO is a member of "the judicial department."

### III. *Conclusion*

This Court concludes that: (1) sovereign immunity does not preclude this action against the Mayor and CAO, (2) the Petitioners have standing to pursue this action, and (3) the Ordinance is valid.

The Demurrer and Alternative Pleas in Bar are hereby overruled. The Respondents shall file an Answer to the Petition and Complaint within twenty-one days of today's date.

### March 11, 2008

On February 8, 2008, came the parties, by counsel, on Petitioner Deborah Jewell-Sherman's and Petitioner School Board of the City of Richmond's and Petitioner-Intervenor City Council of the City of Richmond's (collectively "Petitioners") Motions for Summary Judgment. Upon consideration of the parties' written submissions, arguments of counsel, and previous Orders entered by the Court herein, it is the opinion of this Court and all parties hereto that no material facts are genuinely in dispute and this matter is ripe for summary judgment. It is hereby ordered, adjudged, and decreed, that the Motions for Summary Judgment by Petitioners be granted as stated below.

### *The Declaratory Judgment*

City of Richmond Ordinance No. 2007-191-178 (the "Ordinance") was duly adopted by the City Council on July 23, 2007. Respondent Wilder did not exercise his power under the City Charter as Mayor to veto the Ordinance within the time prescribed by law. As a consequence, the Ordinance is presumed to be valid. Respondents have not rebutted the presumption of validity attached to the Ordinance. The Court's decision with respect to the arguments of the Respondents challenging the validity of the Ordinance is reflected in this Court's Opinion and Order entered on November 5, 2007, which is hereby reaffirmed and adopted as the Court's ruling and incorporated by reference in this Final Decree. Therefore, the Ordinance is hereby declared to be a lawful and valid exercise of the City Council's legislative power. Further, the Ordinance is a valid enactment of City Council. It has the force and effect of law and is legally binding upon Respondents Wilder and Black and all those acting in concert with them with respect to the subject matter of the Ordinance. Finally, the Court declares that Respondents did not act in accordance with the requirements of the Ordinance.

*The Injunction*

For the reasons stated above, the Court finds it is appropriate and necessary to grant the request of the Petitioners for injunctive relief in addition to the declaratory judgment. Respondent Wilder is hereby ordered to comply with the requirements of the Ordinance. Specifically, Respondent Wilder shall forthwith cause the Lease referenced in the Ordinance to be prepared between the City of Richmond and the School Board of the City of Richmond that is substantially in the form of the document attached to the Ordinance and approved as to form by the City Attorney. Respondent Wilder shall cause the Lease to be executed on behalf of the City of Richmond and to be delivered to the Chairman of the School Board and the Superintendent of the Richmond Public Schools for their signature and remittance of the sum of $10.00 to the City as the annual rent payment. The above shall be completed within thirty days after the date of the Order. This Order is dated March 11, 2008. Upon execution of the Lease by all the parties, the one-year term of the lease shall commence. Respondents Wilder and Black are hereby enjoined, for so long as this injunction remains in force and effect, from taking any actions that are contrary to the Ordinance, the Lease, or this injunction; nor shall they request, cause, or instruct any other person(s) acting pursuant to Respondents' direction to take any such action. This injunction shall remain in force and effect until one of the following conditions occurs, after the occurrence of which this injunction shall dissolve, (a) upon the expiration of the term of the Lease, including all properly exercised renewal periods; (b) upon a default under the lease not cured or subject to cure under its terms or the law; or (c) until the Ordinance and/or the Lease are no longer in effect through subsequent action of the City Council. Notwithstanding the foregoing, this injunction shall not remain in force and shall be deemed dissolved no later than five years after the commencement of the Lease term.

*The Request for a Stay*

Respondents Wilder and Black have also requested a stay of the injunction while they proceed with an appeal before the Supreme Court of Virginia. At oral arguments, both parties presented brief arguments on this issue. Respondents cited *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F. 2d 189 (4th Cir. 1977), and Petitioner City Council cited *Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970), as the appropriate standard for determining if a stay should be granted. *Blackwelder* did not involve a

question of a stay, but rather a question of when a court should grant a request for a preliminary injunction. *Long* established the standard for a stay when a court had decided a case on the merits and rendered a final decree. Therefore, this Court will use the standard enunciated in *Long*, which provided a stay should be granted if the party seeking a stay establishes: (a) he will likely prevail on the merits of the appeal, (b) he will suffer irreparable injury if the stay is denied, (c) other parties will not be substantially harmed by the stay, and (d) the public interest will be served by granting the stay. In this matter, Respondents have failed to show they are likely to prevail on the merits. The Supreme Court of Virginia has rejected many of the legal issues presented by Respondents in this case when it dismissed Respondents' Petition for Writ of Prohibition or Mandamus in *In re L. Douglas Wilder, in his official capacity as Mayor of the City of Richmond*, Record No. 071723 (Va. S. Ct. September 28, 2007). Further, Respondents have failed to demonstrate any irreparable injury if the stay is denied. Petitioner School Board is currently occupying the floor space in question at City Hall. The injunctive relief ordered herein, including the execution of the lease, neither displaces another occupant nor disrupts operation of any party. It maintains and legalizes the status quo. In addition, Respondents have not alleged any "substantial administrative and economic burdens" if the stay is denied. *Long v. Robinson*, 432 F.2d 977, 978 (4th Cir. 1970). For the reasons stated above, Petitioners will not suffer any harm if the stay is granted. The public interest lies in complying with valid ordinances of a legislative body. Therefore, this Court finds that Petitioners Wilder and Black have failed to meet their burden in requesting a stay of this injunction. The request for a stay is hereby denied. There being nothing further to be done in this cause, the clerk shall strike this case from the docket and place it among the ended cases.